George W. TENNIAN, Plaintiff,

v.

UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 328, AFL–CIO, which is sued by and through Lena DiIorio, its president, and James Riley, its Secretary–Treasurer, Defendant.

No. CIV.A. 02–120–L.

United States District Court, D. Rhode Island.

June 12, 2003.

Richard A. Skolnik, Skolnik, McIntyre & Tate, Esqs. Ltd., Providence, RI, for Plaintiff.

Marc Gursky, Gursky Law Associates, Providence, RI, for Defendant.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

Plaintiff George Tennian, a past president of defendant United Food and Commercial Workers Union, Local 328 ("the Local"), feels wronged by the Local's refusal to provide him with certain benefits to which he claims entitlement as a life member of the Local and as an active member of its Retirees' Club. The Local responds that, quite simply, Tennian's status as a life member confers no rights at all, and that the Local's president wields the discretionary power to furnish or not furnish life members with privileges as she sees fit. Moreover, the Local argues, Tennian has failed to exhaust the Local's internal procedures for resolving disputes.

Pending are the Local's motion for summary judgment and Tennian's motion to amend the complaint. For the reasons that follow, the Local's motion is hereby granted and Tennian's motion is denied.

## BACKGROUND

Tennian served as president of the Local from 1995 through 2000; shortly after relinquishing that post he left Rhode Island to become a resident of Florida. By virtue of his long-standing active membership, Tennian became eligible upon retirement for what the Local's bylaws call "paid-up life membership," essentially an honorary category of members who, according to the bylaws, "shall have no voice or vote in Union affairs." The Local's Executive Board conferred life membership on Tennian in September of 2000.

In October, 2000, Tennian joined the Local's Retirees' Club, an organization chartered by the United Food and Commercial Workers International Union (the "International"). The Local also derives its charter from the International and is subject to the International's constitution. The Retirees' Club has its own set of bylaws, which creates its own set of officers, separate from the Local's.

Tennian alleges that upon attaining life member status he began receiving copies of The Union Voice, the Local's quarterly newsletter. Delivery of that publication ceased, however, after July, 2001, and despite Tennian's repeated requests has never resumed. He also claims that he is entitled to receive other unspecified notices and invitations from the Local, and similar materials from the Retirees' Club, and that all of those sundry missives have been intentionally withheld.

According to Tennian, the source of his problem with the Local's mailing list is Lena DiIorio, the union's current president, who Tennian believes bears him sufficient enmity to cut off the Local's communications with him. He has not suggested a reason for her alleged antipathy. In her deposition, DiIorio claimed that she removed Tennian from the Local's mailing list for the Union Voice because she determined that he did not have an interest in the Local's affairs.

Tennian filed suit in Rhode Island Superior Court, sitting in Providence, on February 27, 2002, asking that Court to force the Local and the Retirees' Club to provide him with all the accoutrements of membership in those organizations. The complaint, which named only the Local as a defendant, also sought punitive damages, attorneys' fees and costs.

The Local responded by removing the suit to this Court, on the basis of 28 U.S.C. § 1331, stating that the action arises under two federal statutes governing labor organizations and their members: the Labor–Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2000), and the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401–531 (2000). Plaintiff has not contested that characterization. The Local subsequently answered the complaint, and in due course filed the instant motion for summary judgment. Upon learning, during the course of a hearing unrelated to these motions, of the Local's contention that the Retirees' Club was a separate entity, Tennian filed a motion to amend the complaint to add the Retirees' Club as a defendant.

## DISCUSSION

*I.   Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides the standard for ruling on summary judgment motions:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

If there exists a genuine issue of material fact, that is, a fact that might affect the outcome of the suit, *see Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 31 (1st Cir.1995) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), summary judgment must be denied. A dispute over a material fact "is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* The Court must view all evidence and related inferences in the light most favorable to the nonmoving party. *See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997).

■ The Local correctly points out that the scope of a court's review of unions' internal affairs is particularly limited. *See, e.g., Dow v. United Bhd. of Carpenters & Joiners of America*, 1 F.3d 56, 58 (1st Cir.1993); *Local No. 48 v. United Bhd. of Carpenters & Joiners of America*, 920 F.2d 1047, 1051 (1st Cir.1990). The preceding is especially true when a plaintiff challenges a union's interpretation of its own constitution. *See Dow* at 58.

Here, Tennian has asserted an entitlement to certain rights as a life member of the Local and an active member of the Retirees' Club, and the Local has denied that those rights exist. Unfortunately, plaintiff has supplied no hook, no applicable provision of law, statutory or common, on which to hang the relief he seeks. The complaint styles the Local's actions as discriminatory, but does not specify the type of discrimination or even allege, not to mention substantiate, sufficient facts to make out even a prima facie discrimination claim. Most importantly, Tennian has failed to identify the source of his alleged right to receive communications from the Local, and this Court's review of the Local's bylaws and the International's constitution reveals nothing that contradicts the Local's contention that no such right exists.

## II. Local 328's Bylaws

■ Article 4, Section D of the Local's bylaws describes the eligibility requirements for and the manner of bestowing paid-up life memberships. Those terms are clear and neither party disputes their application. Section D goes on to provide that

> [p]aid-up life members may be privileged to attend membership meetings and serve on committees as determined by the Local Union President and may, at the request of the Local Union President, make reports or otherwise address such meetings. Paid-up life members, however, shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

Article 5 of the bylaws is entitled "Membership Rights and Privileges." Section B of that article substantively mirrors the above-quoted language in every respect.[1] Taken together, the two sections declare that whatever rights life members retain exist by the grace of the Local's president, and do not emanate from the bylaws themselves.

## III. The International's Constitution

■ Nothing in the constitution of the International, to which members of the Local are subject by virtue of Article 4,

---

1. Article 5, Section B provides that [a]ffiliated and paid-up life members may be privileged to attend membership meetings and serve on committees as the Local Union President may determine. Such members may, at the request of the Local Union President, make reports or otherwise address such meetings. They shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

Section I of the Local's bylaws, endows life members with any broader entitlements than do the bylaws themselves. In fact, Article 5, section A of the constitution prescribes the rights of life members in precisely the same manner as Article 5, Section B of the Local's bylaws:

[a]ffiliated and paid-up life members may be privileged to attend membership meetings and serve on committees as the Local Union President may determine. Such members may, at the request of the Local Union President, make reports or otherwise address such meetings. They shall have no voice or vote in Union affairs, nor shall they hold Union office or be elected a delegate.

Moreover, Article 34, Section B(1) of the constitution vests in the president of the local union "the authority to interpret the bylaws of the Local Union, subject to an appeal to the Local Union Executive Board ...." Article 8, Section C(3) of the Local's bylaws bestows the same authority upon the president.

*IV. Application*

As the foregoing makes clear, neither the Local's bylaws, nor the International's constitution confer any specific rights on paid-up life members. It is within the prerogative of the president of the Local, DiIorio, to grant or withhold privileges as she sees fit. Tennian acknowledges that discretion, but argues that DiIorio cannot capriciously remove some life members but not others from the mailing list for The Union Voice. He cites no authority to support his position, however. He merely alleges, and testified at his deposition, that some other life members and retirees receive the newsletter, and that there is no reason why he should be excluded from its circulation.

■ In addition to alleging discriminatory treatment, Tennian attempts to craft an equitable estoppel claim out of his removal from the Local's mailing list. Equitable estoppel only applies, however, when the party asserting it detrimentally acted or failed to act in reliance on conduct of the party against whom it is asserted. *See El Marocco Club, Inc. v. Richardson,* 746 A.2d 1228, 1233–34 (R.I.2000). The estoppel claim requires little discussion; Tennian has failed to propound any facts that suggest that he did anything to his detriment based on the receipt of two issues of The Union Voice.

*V. Exhaustion*

■ An alternative basis for the Local's motion is Tennian's failure to exhaust his intra-union remedies prior to filing suit. The LMRDA, the federal statute that governs relations between unions and their members, permits courts to decline to hear a union member's lawsuit until that member has exhausted reasonable hearing procedures. *See* 29 U.S.C. § 411(a)(4) (2000).

Article 25, section E of the International's constitution provides that:

1. Every dispute relating to the interpretation or application of the Local Union bylaws or rules or the Constitution or laws of the International Union shall be exclusively resolved through the remedial procedures provided therein. Resolution of any such dispute pursuant to such procedures shall be final and binding.

2. No member shall institute an action outside the Union against the International Union, Local Union, or any of their officers or representatives without first exhausting all remedies provided by the Local Union bylaws and rules and the Constitution and laws of the International Union.

Article 26 of the International's constitution, entitled "Disciplinary Proceedings

and Appeals," details an extensive procedure for resolving alleged violations of the constitution or a local union's bylaws. The parties clash over whether the instant dispute falls within the rubric of Article 26; Tennian maintains that the article only applies to pure disciplinary matters, which this is not, while the Local gives the article a much broader construction. On its face nothing in Article 26 forecloses its application to these facts; it appears to permit Tennian to lodge a complaint against DiIorio with the Local's Executive Board for violating the Local's bylaws or the International's constitution.

An additional, and perhaps procedurally simpler method for resolving the dispute presents itself in the aforementioned Article 34, section B(1) of the International's constitution and its counterpart, Article 8, Section C(3) of the Local's bylaws. Both provisions vest in the Local's president "the authority to interpret the bylaws and rules of the Local Union ...," and specify that the president's interpretations are subject to an appeal to the Local's Executive Board. Plaintiff, faced with DiIorio's apparent intransigence, could have appealed to the Board her construction of the rights afforded to life members.

It is clear, in either event, that Tennian had alternative recourse to filing suit, and that both the International's and Local's internal regulations required him to utilize those avenues before resorting to litigation.

Tennian argues that even if there are internal dispute resolution procedures available, exhaustion would in this case be futile. However, to be successful, a futility claim requires factual underpinnings that give rise to the conclusion that the Local has stacked the deck against Tennian. Absent his allegation that DiIorio has some sort of personal vendetta against him, Tennian has made no showing that

any other officer of the Local, and in particular, its executive board, the ultimate arbiter of DiIorio's interpretation of the bylaws, bears him any ill will or is predisposed to deny him relief. In sum, two independent grounds support granting the Local's motion: (1) the absence of any affirmative obligation on its part to provide life members with written materials, and, alternatively, (2) Tennian's failure to utilize the intra-union procedures available to redress his alleged slight at the hands of the Local's current president. This Court chooses to exercise its discretion by not requiring exhaustion, and relies exclusively on the first, substantive rationale, in order to expedite resolution of the litigation and bring it to a conclusion on its merits.

By way of closing, it is beyond the purview of this Court to conduct a searching inquiry into the internal affairs of the Local, particularly with respect to disputes as parochial as this one. DiIorio's reasons for keeping Tennian out of the loop, be they personal or political, are more appropriately addressed within the union and not the judiciary.

### IV.  Motion to Amend

■■■ A court may deny a motion to amend the complaint if amendment would be futile. See *Hatch v. Dep't For Children, Youth and Their Families,* 274 F.3d 12, 19 (1st Cir.2001). Granting the Local's instant motion renders Tennian's proposed amendment futile, since dismissal of the Local deprives this Court of subject matter jurisdiction. The Local removed the suit because, as a labor organization, a complaint lodged against it by a member implicates federal labor laws. Because there is no reason to believe that the Retirees' Club is a labor organization, the Local's dismissal eliminates any apparent basis for federal question jurisdiction. Ac-

cordingly, Tennian's motion to amend is hereby denied.

CONCLUSION

For the foregoing reasons, the Local's motion for summary judgment is hereby granted, and Tennian's motion to amend is denied.

The Clerk shall enter judgment for the defendant forthwith.

It is so ordered.